# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN BATES, | Civil Action No. 15-780 |
| Plaintiff, | |
| | District Judge Nora Barry Fischer |
| v. | Magistrate Judge Lisa Pupo Lenihan |
| | ECF No. 19 |
| LT. A.J. MORRIS, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

For the following reasons, it is respectfully recommended that the Motion to Dismiss filed by Defendants Gagnon, A.J. Morris and John Watson (ECF No. 19) be granted in part and denied in part as set forth below.

**II.    REPORT**

Plaintiff Kevin Bates is an inmate in the custody of the Pennsylvania Department of Corrections confined at SCI-Benner Township. The events complained of in this matter occurred when Plaintiff was incarcerated at SCI-Greene. He filed this lawsuit against SCI-Greene Lieutenant A.J. Morris, Sergeant Gagnon, John Watson, L.P.N., Dr. Robert Wilson, Block Sergeant John Doe, Corr. Officer(s) John Doe(s) 1-5 and Medical Nurse John Doe[1]. In sum, his

---

[1] As there are no allegations in the Complaint against Medical Nurse John Doe the Court issued a Show Cause Order why this defendant should not be dismissed with a reply due on Feb. 23, 2016.

1

Complaint alleges that an intentional refusal to provide him with meals caused him, as a diabetic, to go into diabetic shock. While in that state, Defendant Morris and others used excessive force by applying an EBID device to move him, and the medical team acted with deliberate indifference to his medical needs. Plaintiff asserts Eighth Amendment claims for excessive force, cruel and unusual punishment, unsafe conditions, retaliation and deliberate indifference. He also asserts state law claims of assault and battery, intentional infliction of emotional distress and negligence.

### **Plaintiff's Allegations**

Plaintiff alleges that Defendant Gagnon refused to provide him his food tray twice on July 7, 2013 and again on July 8, 2013[2], in retaliation for him refusing to "give up" his tray on another occasion. ECF No. 3 ¶ 26. He alleges that he told the Sergeant that he is a Type 1 diabetic and not eating would cause his blood sugar to drop and he would pass out. ECF No. 3 ¶ 25. On July 8, 2013 Dr. Wilson performed sick call by knocking on Plaintiff's door. Hearing no response, he moved on. Plaintiff states that he did not respond because he was in diabetic shock. Between 3pm and 4pm on the same day Defendant Watson tapped on Plaintiff's window and noted that he was unresponsive. He then summoned Defendant Morris and 5 of the John Doe officers and came back. Plaintiff states that he was in a diabetic coma, however, the officers, determining that he was being noncompliant, used a Taser device on him called an EBID and handcuffed and shackled him. Plaintiff alleges that the use of this device constituted excessive force. He further alleges that Defendant Watson was present and ignored it when he should have known that Plaintiff was in diabetic shock. He was then taken to medical where it was

---

[2] The Complaint is not entirely clear as to whether Plaintiff was given meals on July 8, 2013. For the purposes of this Motion the Court is assuming that he was denied his food tray twice on July 8 as well as July 7.

discovered that his blood sugar was dangerously low. At that time he was placed in a wheelchair and provided with medical treatment.

**Standard of Review**

The United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); see also Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir.2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

**A. Discussion**

Defendants Morris, Gagnon and Watson, hereinafter referred to collectively as the "DOC Defendants," move to dismiss Plaintiff's claims of assault and battery, deliberate indifference to his safety and medical needs, intentional infliction of emotional distress, negligence and retaliation.

1. Assault and Battery and Intentional Infliction of Emotional Distress

Based upon Morris' use of the EBID and Gagnon's failure to provide Plaintiff with his food trays, Plaintiff asserts a pendent state law intentional tort claim against Morris and Gagnon

for assault and battery and intentional infliction of emotional distress. In 1978, the Pennsylvania General Assembly passed the Act of September 28, 1978, P.L. 788, No. 152, 1 Pa. C.S. § 2310, which is a comprehensive tort claims act that provides sovereign immunity for the Commonwealth, its agencies, and employees acting within the scope of their employment. There are nine exceptions to this sovereign immunity. They are: (1) vehicle liability; (2) medical/professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. C.S. § 8522. Additionally, sovereign immunity applies to intentional as well as negligent torts. *See Story v. Mechling*, 412 F. Supp. 2d 509, 519 (W.D. Pa. 2006).

The Pennsylvania Department of Corrections is an agency of the Commonwealth of Pennsylvania. *See Waters v. Tennis*, No. 04-2497, 2006 WL 2136248, at *2 (M.D. Pa. July 26, 2006). As such, it is governed by Section 8522, which does not provide an exception for willful misconduct. *See Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 52 (3d Cir. 1985); *Holt v. Nw. Pa. Training P'ship Consortium, Inc.*, 694 A.2d 1134, 1140 (Pa. Commw. 1997) ("Unlike for local agency employees, willful misconduct does not vitiate a Commonwealth employee's immunity.")

Plaintiff's state law claims against Defendants Morris and Gagnon, as employees of the DOC, do not fall within one of the exceptions to sovereign immunity listed in Section 8522. The claims are therefore barred unless these defendants were acting outside the scope of their employment during the alleged acts.

Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpected by the employer. *Wesley v. Hollis*, No. 03-3130, 2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007). Where the alleged intentional tort was provoked, unnecessary or unjustified by security concerns or penological goals, courts have ruled that such conduct does not, as a matter of law, fall within the scope of employment. For example, in *Robus v. Pa. Dep't of Corr.*, No. 04-2175, 2006 WL 2060615, at *8 (E.D. Pa. Jul. 20, 2006), the defendant corrections officer allegedly beat the plaintiff and placed him, without justification, in the restricted housing unit. Concluding that if the defendant acted as alleged, then his conduct fell outside the scope of his employment, the court declined to dismiss the plaintiff's claims against that defendant on sovereign immunity grounds.

Similarly, in *Velykis v. Shannon*, No. 06-0124, 2006 WL 3098025 (M.D. Pa. Oct. 30, 2006), where a defendant corrections officer allegedly slammed a van door on the plaintiff's head, the court held that the defendant was not entitled to dismissal at the pleading stage on the basis of sovereign immunity. In so concluding, the court noted that "[t]he intentional use of force alleged here is not of a kind and nature [the defendant] was employed to perform, it does not appear to have been intended to serve any purpose of the Department of Corrections, and while the Department would expect that force might be used at some point against an inmate, it would not expect the deliberate and unjustified use of force, apparently totally divorced from any need of the officer to exert control over the prisoner." *Id.* at *4.

Taking Plaintiff's allegations as true, as the court must in considering a Rule 12(b)(6) motion, he was in a diabetic coma at the time of the use of the EBID. If true, it could reasonably be argued that the use of force was unprovoked and unwarranted. Such use of force is not the type of force expected or permitted by the Department of Corrections. Therefore, Defendant Morris is not entitled to sovereign immunity at this stage of the proceedings and Plaintiff's assault and battery and intentional infliction of emotional distress claims as to him should not be dismissed.[3]

The allegations against Defendant Gagnon are simply that he failed to give Plaintiff his food trays. The Court finds that this does not give rise to the type of intentional act that would make it an exception to the sovereign immunity defense. *See Rodriguez v. Wetzel,* No. 2:14-cv-0324, 2015 WL 1033842 at *11 (W.D. Pa. March 9, 2015); *Zanders v. Ferko,* 439 F. App'x 158 (3d Cir. 2011) (alleged deprivation of 3 meals over two days fails to rise to the level of a constitutional violation) (citing *Foster v. Runnels*, 554 F.3d 807, 812-13 (9th Cir. 2009) (holding denial of 16 meals over 23-day period was sufficiently serious deprivation for purposes of the Eighth Amendment but denial of meals on two isolated occurrences did not rise to the level of a constitutional violation.) The Court recommends that the intentional infliction of emotional distress claim as to Defendant Gagnon should be dismissed.

2. <u>Negligence Claim</u>

Plaintiff avers that Defendant Watson's lack of response to his medical emergency constituted negligence under Section 1983. It is well settled that negligence claims cannot be asserted in the context of a Section 1983 claim. *Davidson v. O'Lone*, 752 F.2d 817 (3d Cir.

---

[3] In Plaintiff's Brief in Response he erroneously argues against a qualified immunity defense. That is not the defense that the Defendants are raising in their Motion.

1984). As the Supreme Court has stated, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). [4]

Plaintiff argues in his Brief that any claims he is making against Defendant Watson should be incorporated into his deliberate indifference claim. As the court will explain below, it will allow Plaintiff's deliberate indifference claim to stand against Defendant Watson but he may not maintain a negligence claim. Therefore, Plaintiff's negligence claim against Defendant Watson should be dismissed.

   3. Deliberate Indifference

      i. Denial of meals

Plaintiff asserts that Defendants Morris, Gagnon and Watson were deliberately indifferent to his safety and serious medical needs when he was refused two consecutive meals and when they failed to properly respond to his medical emergency. The DOC Defendants argue that the Eighth Amendment does not require that inmates be afforded "comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). Defendants argue that the only allegations of Plaintiff's Complaint that could be construed to pertain to the denial of life's necessities are the two meals that plaintiff avers were not provided to him. The Court agrees that this does not rise to the level of deliberate indifference.

---

[4] If Plaintiff were pursuing a negligence action against Defendant Watson, he would be stating a claim for medical malpractice. Pennsylvania law requires that a Certificate of Merit accompany a claim for professional liability brought against certain designated licensed professionals. This requirement is provided for in Pa. R. Civ. P. 1042.3, which states that the COM must be filed within sixty days following any action where it is alleged that "a licensed professional deviated from the acceptable professional standard." Pa. R. Civ. P. 1042.3. The Third Circuit has recently held that this COM requirement is a rule of substantive law and must be applied by federal courts in professional negligence cases. *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 264-65 (3d Cir. 2011).

The Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court set forth the standard for alleged violations of the Eighth Amendment while addressing non-medical conditions of confinement. The Court held that the prisoner must prove that prison officials acted with deliberate indifference that deprived him of "'the minimal civilized measure of life's necessities.'" *Id*. at 298-99, 301-05 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Plaintiff argues that he would not have been in diabetic shock in the first place if he had not been refused two consecutive meals by Defendant Gagnon. His position is that the denial of these meals, because he is a diabetic, rises to the level of a constitutional violation. The Court does not agree. Missing two meals does not rise to the level of a constitutional violation. *See Rodriguez*, 2015 WL 1033842, at *11; *Zanders,* 439 F. App'x at 158 (citing *Foster*, 554 F.3d at 812-13).

    ii.    <u>Serious medical needs</u>

Defendants further argue that Plaintiff has failed to state a claim for deliberate indifference to his serious medical needs, citing to the Supreme Court case of *Estelle v. Gamble*, 429 U.S. 97 (1976). In the context of medical treatment, an inmate must prove two elements: (1) that he was suffering from a "serious medical need," and (2) that prison officials were deliberately indifferent to the serious medical need. *Estelle,* 429 U.S. at 106.

The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second prong requires a court to subjectively determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). A prisoner must demonstrate that the official acted with more than mere negligence. *Estelle*, 429 U.S. at 105; *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). Moreover, "[a] court may not substitute its own judgment for diagnosis and treatment decisions made by prison medical staff members." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

Plaintiff argues that when he lapsed into diabetic shock, rather than providing him with medical treatment, Defendants decided to Taser, handcuff and shackle him. These actions, in his opinion, constitute deliberate indifference. Taking Plaintiff's allegations as true, as the Court must at this stage of the proceeding, using a Taser on a person in a diabetic coma could rise to the level of deliberate indifference. Although Defendants tell a different story as to what happened, at this phase, the Court may only consider the allegations as set forth by the Plaintiff.

Accordingly, the DOC Defendants' Motion to Dismiss Plaintiff's deliberate indifference claims should be denied.

4. Retaliation

Finally, Defendants Morris and Gagnon argue that Plaintiff's allegations fail to set forth a claim of retaliation in violation of his constitutionally protected rights. In his Brief in Response to this Motion, Plaintiff alleges that while housed on F-Unit, he was given a regular tray, rather than the special tray ordered for him due to his Type 1 Diabetes. He and about six other prisoners withheld their trays until proper trays were provided. In Plaintiff's Complaint his allegation is that Gagnon refused him his meal specifically because of what he did when housed on F-Unit. ECF No. 3 ¶ 26.

To establish a claim of retaliation, a plaintiff bears the burden of satisfying three elements. First, a prisoner-plaintiff must prove that he engaged in a constitutionally protected activity. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner-plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Allah,* 229 F.3d at 225 (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner-plaintiff must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pa.*, 157 Fed. App'x 491, 498 (3d Cir. 2005).

Once a plaintiff has made a prima facie case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the

protected conduct for reasons reasonably related to penological interest." *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002) (internal quotation and citation omitted).

In the instant case, the Court finds that Plaintiff has failed to meet the first requirement of a retaliation claim. Although in his Responsive Brief he throws in the fact that his request for a grievance was refused by Defendant Gagnon, this does not appear in his Complaint. In addition, it is not argued that the act of denying him his meal was in retaliation for filing a grievance, which would be a constitutionally protected right. Plaintiff's protest for being given a nondiabetic meal in the form of disobeying institutional orders by failing to return his food tray does not constitute a constitutionally protected activity. There is no mention anywhere of Defendant Morris's involvement in the denial of the food tray. Therefore, it is recommended that Defendants Morris and Gagnon's Motion to Dismiss Plaintiff's retaliation claims be granted.

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants Morris, Gagnon and Watson's Motion to Dismiss (ECF No. 11) be granted in part and denied in part. Specifically, it is recommended that:

1. the motion to dismiss the assault and battery claim as to Defendant Morris (Count 2) and intentional infliction of emotional distress claim as to Defendant Morris (Count 5) be denied;

2. the motion to dismiss the claim of deliberate indifference to serious medical needs against Defendant Watson (Counts 4 and 6) be denied;

3. the motion to dismiss the deliberate indifference to prison conditions/ creation of unsafe conditions claim against Defendants Morris, Gagnon, and Watson (Count 3) be granted;

4. the motion to dismiss the intentional infliction of emotional distress claim as to Defendant Gagnon (Count 5) be granted;

5. the motion to dismiss the negligence claim against Defendant Watson (Count 7) be granted;

6. the motion to dismiss the retaliation claims against Defendants Morris and Gagnon (Counts 8 and 9) be granted.

The additional claim that would remain against these Defendants is a claim of use of excessive force in violation of the Eighth amendment against Defendant Morris (Count 1).

**Amendment of Complaint**

The court must allow amendment by the plaintiff in civil rights cases brought under Section 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker* 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile). We are cognizant of these holdings and further recommended that Plaintiff be given leave to amend.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: Feb. 26, 2015

                                                  Lisa Pupo Lenihan
                                                  United States Magistrate Judge

cc: **KEVIN BATES**
KB-3514
SCI Benner Township
301 Institution Drive
Bellefonte, PA 16823